# COOS,

## JANUARY TERM, A. D. 1845.

### BELLOWS *v.* RUSSELL.

An agreement by several that one shall, in behalf of all, bid for a mail-contract, is not void, unless made for an illegal purpose affecting public policy; and whether it was so made is a question of fact for the jury.

ASSUMPSIT, upon a contract in the following terms:

"It is agreed that the subscribers shall, on their joint account, endeavor to procure the mail-contract on route No. 169, from Haverhill to Lancaster, N. H., from July 1, 1837, to June 30, 1841; and in case they succeed it shall be divided at Littleton, the north half to belong to the

subscriber, George Bellows, and the south half to the sub-scribers, the Littleton Stage Company; and in case of dis-agreement between the parties in relation to the division and apportionment of the mail money, it shall be submit-ted to the decision of some competent person. In case the contract shall be obtained by either of the parties, or by a third person for the benefit of either party, it shall be in trust for the purpose aforesaid.

GEORGE BELLOWS,

LITTLETON STAGE CO.,

By L. A. RUSSELL, Agent.

May 2, 1837."

The only question submitted was as to the legality of the contract. As to this, the plaintiff admits that at the time when it was made the parties met at Littleton, in this State, and learning that each intended to bid for the mail route named, and had made some preparations for that purpose, entered into the contract, reduced the same to writing and signed it.

The case had been submitted to auditors, who made their report presenting the question; and it was ordered that the same be transferred to this court.

*Bellows*, for the defendant.

*Wells*, for the plaintiff.

GILCHRIST, J. Fraudulent practices at auctions, either on the part of vendors employing by-bidders or puffers, as they have been termed, "to screw up the price," or on the part of purchasers, combining to prevent competition at the bidding, and thus to buy in the property at a smaller price than such a competition would probably secure, have been held illegal at common law, and there are many deci-sions to that effect.

A leading case is *Baxwell* v. *Christie*, Cowp. 395; in which Lord *Mansfield*, announcing the doctrine of the court, declared that the bidding at the sale by the owner of the goods, or another on his behalf, was a fraud upon the contract involved in the offer of the article at auction, that it should go to the highest bidder. This was in an action by the owner against the auctioneer, for selling the chattel at a price below that which he had been directed to sell.

The doctrine was confirmed in *Howard* v. *Castle*, 6 T. R. 642, and has frequently been recognized as law.

In *Doolin* v. *Ward*, 6 Johns. 194, the action was upon a contract between the parties, that one of them should buy certain articles about to be sold at the navy yard, at Brooklyn, and that the parties should share the purchase equally, it was held by the court, that the contract declared on was void; that it was against public policy, and tended injuriously to affect the character and value of sales at auction.

*Wilbur* v. *Howe*, 8 Johns. 444, was on a like contract for bidding off a job upon a certain road. The contract was, upon the authority of *Doolin* v. *Ward*, held to be "*a nudum pactum*, and a fraud upon the vendor."

Mr. Justice *Story*, (Story's Eq. Jur., sec. 293,) asserts the doctrine to be that "agreements, whereby parties engage not to bid against each other at a public auction, especially where such auctions are directed or required by law, as in sales of chattels or other property by execution, are held void; for they are unconscientious and against public policy, and have a tendency injuriously to affect the character and value of sales at public auction, and mislead public confidence. They operate virtually as a fraud upon the sale."

It is, therefore, a well settled doctrine, and is undoubtedly a reasonable one, that holds to be illegal and fraudulent a combination of parties for the express purpose of preventing competition among bidders at an auction, with

a view to take advantage of such a state of things for their own benefit.

It is, however, a different thing entirely to hold that where several parties desire, for any reasonable and just purpose, to become the joint purchasers of property exposed at auction, or to become interested together in a contract so exposed for the competition of bidders, they may not lawfully employ one of their number to act in behalf of the whole, and to bid off for their benefit the property, job or contract so offered.

Accordingly, it has been held in Massachusetts, *Phippen* v. *Stickney*, 3 Met. 384, upon a thorough examination of the cases, that the question as to the legality of such associations depended upon the circumstances in which they are formed. Mr. Justice *Dewey*, in delivering the opinion of the court, observes: "It seems to us, after some consideration of this question, and an examination of the adjudged cases bearing upon it, that we cannot judicially declare that every contract between two or more individuals, in which it may be stipulated that one is to be the purchaser for the joint benefit of himself and another, and that the other is not to interfere with his bidding, shall, when attempted to be enforced for the benefit of the associates, be held void, as a fraud upon the rights of the vendor, and as against public policy, merely because he who seeks to enforce the contract, may have been thereby induced to abstain from bidding. Cases may readily be imagined, and indeed are of frequent occurrence, in sales of large magnitude, where persons do thus unite, and are thereby enabled to become purchasers, when neither of them could otherwise have participated in the bidding."

The conclusion of the court in that case was that fraud could not be presumed, and that the party who would avail himself of such a defence must first establish the fact by a verdict of the jury.

We are of the opinion that such is the only just and

tenable doctrine on the subject. The intent, and other circumstances attending the consent of the parties to the arrangement disclosed in this case, must settle its legal character.

The act of Congress relating to the subject, and to which our attention has been directed, seems to contain nothing relating to the question between these parties more than is comprised in the general principles of the common law. It prohibits the post-master-general from granting contracts to such as shall have entered into "any combination to prevent the making of any bid," or who shall have given or promised to give any consideration to induce others not to bid.

The fair construction of this statute seems not to require us to consider as such a combination an agreement in good faith between several, that one should bid for the whole.

The case must, therefore, stand for trial upon the question of the alleged fraud.

*Remanded for trial.*